IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BRANDON J. WEATHERS,

        Plaintiff,

vs.

BECKY SHAEFFER, Det., #1906;
JAMES WISECARVER, M.D.; KAYE
SHEPARD, M.T., ASCP, DNA Analyst,

        Defendants.

4:17CV3034

MEMORANDUM
AND ORDER

Plaintiff filed a Complaint on March 13, 2017. (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 6.) The court subsequently granted Plaintiff's motion to file an amended complaint. (Filing No. 12.) Plaintiff filed an Amended Complaint on May 25, 2017. (Filing No. 13.) Because the court did not advise Plaintiff that his Amended Complaint would supersede his original Complaint, the court will consider it as supplemental to his original Complaint. *See* NECivR 15.1(b). The court now conducts an initial review of Plaintiff's Complaint and Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. BACKGROUND

Plaintiff was convicted of two counts of first degree sexual assault of a child, a Class IB felony. *See State v. Weathers*, A-16-305, 2017 WL24777 (Neb. App. 2017). The Nebraska Court of Appeals opinion set forth the following facts:

> Weathers was charged with two counts of first degree sexual assault of a child. The evidence presented at trial established that the 13-year-old victim, H.A., was a foster child placed in Weathers' home in April 2014. Although H.A. was removed from Weathers' care in June 2014,

she became pregnant in October, and DNA testing proved that Weather was the father of the child, which H.A. ultimately miscarried. Weathers' defense at trial was that he never had sexual intercourse with H.A.; rather, the pregnancy occurred as a result of H.A. using a syringe containing Weathers' semen.

*Id.* at *1.

## II. SUMMARY OF PLEADINGS

Plaintiff is a prisoner confined at the Lincoln Correctional Center. ([Filing No. 1 at CM/ECF p. 1](#).) He names Omaha Police Department Detective Becky Shaeffer ("Shaeffer") and Dr. James Wisecarver ("Wisecarver") and Kaye Shepard ("Shepard"), both DNA analysts with the University of Nebraska Medical Center ("UNMC"), as Defendants. (*Id.* at CM/ECF p. 2.) He sues them in their official and individual capacities. ([Filing No. 13 at CM/ECF p. 5](#).)

On November 14, 2014, Shaeffer took Plaintiff's buccal swabs pursuant to a search warrant involving an ongoing criminal investigation. ([Filing No. 1 at CM/ECF pp. 4-5](#).) Plaintiff states that the swabs were taken the next day to the "Human DNA Identification laboratory" at UNMC for forensic paternity testing only. (*Id.*) Plaintiff alleges that, "during the course of this forensic paternity testing" and unknown to him until a later date, Wisecarver or Shepard "in conju[n]ction with" Shaeffer submitted his DNA to "either the State DNA Data Base, the Combined DNA Index System (CODIS), or the State DNA Sample Bank" without a subpoena, court order, or search warrant. (*Id.* at CM/ECF pp. 5-6.) He claims, in doing so, Defendants violated his Fourth Amendment rights and specific Nebraska statutes. (*Id.* at CM/ECF p. 6; [Filing No. 13 at CM/ECF p. 3](#).) Plaintiff seeks monetary relief for "mental anguish, loss of privacy." ([Filing No. 1 at CM/ECF pp. 6-7](#).)

# III. APPLICABLE STANDARDS OF REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting

under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## IV.  DISCUSSION

### A.  Shaeffer – Official Capacity

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity. Plaintiff sues Shaeffer, a state employee, for monetary relief. The Eleventh Amendment bars his claims against her in her official capacity. Plaintiff's claims against Shaeffer in her official capacity will be dismissed.

### B. Wisecarver and Shepard – Official Capacity

Wisecarver and Shepard are private actors employed at UNMC. Plaintiff alleges that Shaeffer worked "in conju[n]ction" with Wisecarver and Shepard to submit his DNA to "either the State DNA Data Base, the Combined DNA Index System (CODIS), or the State DNA Sample Bank." This is not a sufficient allegation that Defendants reached a meeting of the minds with any state actor. *See Wagner v. Jones*, 664 F.3d 259, 268 (8th Cir. 2011) (§ 1983 claim requires showing that person acting under color of state law caused constitutional deprivation); *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (to allege state

4

action in § 1983 conspiracy claim against private actors, complaint must allege specific facts showing—either directly or indirectly-a meeting of the minds between state actor and private actors); *DuBose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999) (conduct of counsel generally does not constitute action under color of law; finding attorney's ex parte communication with judge insufficient for conspiracy claim unless judge promised to secure outcome). Alternatively, even if Plaintiff's allegations are sufficient[1], his official capacity claims against them fail for the same reason as his official capacity claim against Shaeffer: Eleventh Amendment sovereign immunity. Plaintiff's claims against Wisecarver and Shepard in their official capacities will be dismissed.

**C. Individual Capacity Claims**

Plaintiff alleges that Defendants submitted his DNA to "either the State DNA Data Base, the Combined DNA Index System (CODIS), or the State DNA Sample Bank" without a subpoena, court order, or search warrant "during the course of . . . forensic paternity testing" in violation of his Fourth Amendment right to be free from unreasonable search and seizure and right to privacy.

The State DNA Data Base stores and maintains DNA records related to, in relevant part, convicted offenders required to provide a DNA sample under Nebraska's DNA Identification Information Act, Neb. Rev. Stat. §§ 29-4101 to 29-4115.01. *See* Neb. Rev. Stat. § 29-4104 (West). A person convicted of a felony offense on or after July 15, 2010, who does not have a DNA sample available for use in the State DNA Sample bank must give a DNA sample upon intake to a

---

[1] Further, the Nebraska State Patrol may contract with UNMC to establish the State DNA Sample Bank. *See* Neb. Rev. Stat. § 29-4105(2) (West). "Any such contract shall require that the University of Nebraska Medical Center be subject to the same restrictions and requirements of the act, insofar as applicable, as the Nebraska State Patrol, as well as any additional restrictions imposed by the patrol." *Id*. The court could infer from § 29-4105(2) that individuals employed at UNMC act "under color of state law" when they submit a DNA sample from an individual to the State DNA Sample Bank.

prison, jail or other detention facility or institution to which such person is sentenced, or if already confined at the time of sentencing, immediately after the sentencing at the place of incarceration or confinement. *See* Neb. Rev. Stat. § 29-4106(1)(a) (West). The State DNA Sample Bank serves as the repository of collected DNA samples. Neb. Rev. Stat. § 29-4105(2) (West). The Nebraska State Patrol administers the State DNA Data Base and provides those records to the Federal Bureau of Investigation for storage and maintenance in the Combined DNA Index System ("CODIS").[2] Neb. Rev. Stat. § 29-4104. CODIS records contain only the DNA profile created from the DNA sample, an identifier for the agency that provided the DNA sample, a specimen identification number, and the name of the personnel associated with the analysis. *See U.S. v. Kincade*, 379 F.3d 813, 819 n.8 (9th Cir. 2004), *cert. denied*, 544 U.S. 924 (2005) (citation omitted). Similarly, in Nebraska, DNA samples and DNA records "shall only be used by the Nebraska State Patrol (a) to create a separate population data base comprised of DNA records obtained after all personal identification is removed and (b) for quality assurance, training, and research purposes related to human DNA identification." Neb. Rev. Stat. § 29-4105(3).

---

[2] "Authorized by Congress and supervised by the Federal Bureau of Investigation, the Combined DNA Index System (CODIS) connects DNA laboratories at the local, state, and national level. Since its authorization in 1994, the CODIS system has grown to include all 50 States and a number of federal agencies. CODIS collects DNA profiles provided by local laboratories taken from arrestees, convicted offenders, and forensic evidence found at crime scenes. To participate in CODIS, a local laboratory must sign a memorandum of understanding agreeing to adhere to quality standards and submit to audits to evaluate compliance with the federal standards for scientifically rigorous DNA testing." *Maryland v. King*, 133 S. Ct. 1958, 1968 (2013). *See* § 29-4105(1) (setting forth that procedures for submission of DNA records in State DNA Data Base must be compatible with the procedures specified by the Federal Bureau of Investigation).

A review of JUSTICE[3], the trial case management system for Nebraska, shows that on June 5, 2017, upon the State's motion, the Douglas County District Court ordered Plaintiff to submit a DNA sample. The State maintained that Plaintiff does not have a DNA sample in the State DNA Sample Bank. As a result of his convictions, under § 29-4106(1), Plaintiff is required to submit a DNA sample to the State DNA Sample Bank. The Douglas County District Court previously ordered Plaintiff to submit a DNA sample in its sentencing order dated February 18, 2016. Plaintiff thereafter failed twice to do so voluntarily. This public records information certainly belies Plaintiff's allegation that Defendants submitted his DNA, albeit a sample or records related to that sample, to any database prior to the state district court order dated just over a week ago. And, state and federal courts across the country have upheld the constitutionality of DNA collection statutes against Fourth Amendment challenges from convicted criminals. *See Kincade*, 379 F.3d at 830–31 (collecting cases); *see also Boroian v. Mueller*, 616 F.3d 60, 67-68 (1st Cir. 2010) ("we join the other courts to have addressed the issue in holding that the government's retention and matching of Boroian's profile against other profiles in CODIS does not violate . . . the Fourth Amendment."); *Green v. Berge*, 354 F.3d 675, 677 (7th Cir. 2004) (noting that state and federal courts that have addressed validity of DNA collection statutes "are almost unanimous in holding that these statutes do not violate the Fourth Amendment).

Nevertheless, the United States Supreme Court has upheld from a Fourth Amendment challenge the constitutionality of sample collection and analysis of DNA from arrestees of a serious offense supported by probable cause. *See Maryland v. King*, 133 S. Ct. 1958, 1980 (2013) ("When officers make an arrest supported by probable cause to hold for a serious offense and bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is like fingerprinting and photographing--a legitimate police

---

[3] Douglas County District Court Case No. CR 14-3306, at https://www.nebraska.gov/justice//case.cgi. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records).

booking procedure that is reasonable under the Fourth Amendment."). Specifically, the Court found, "[O]nce respondent's DNA was lawfully collected the STR analysis of respondent's DNA pursuant to CODIS procedures did not amount to a significant invasion of privacy that would render the DNA identification impermissible under the Fourth Amendment." *Id.* The Court reasoned that, this is because, the DNA profile in CODIS reveals only identification information. *Id.* at 1979-80.

Here, Plaintiff's DNA sample was collected pursuant to a search warrant. The court finds Plaintiff's situation analogous to that of the respondent in *King* inasmuch as Plaintiff was lawfully detained by law enforcement to collect DNA from swabs of his cheek[4], but with the exception of an added protection: a neutral, detached magistrate found probable cause to support collection of DNA from Plaintiff. Accordingly, it follows under the reasoning of *King* that Defendants could not have violated his Fourth Amendment rights even if they did submit his DNA sample to the State DNA Sample Bank or any records related to that sample to CODIS or its Nebraska state-equivalent, the State DNA Data Base, ""during the course of . . . forensic paternity testing." Plaintiff's Fourth Amendment claims against Defendants in their individual capacities will be dismissed.

**D. State Law Claims**

Plaintiff cites three statutes within Nebraska's DNA Identification Information Act in his Amended Complaint. (Filing No. 13 at CM/ECF p. 3.) To the extent Plaintiff alleges violations of state law, the court will not exercise supplemental jurisdiction over Plaintiff's state law claims because he fails to allege a federal claim upon which relief may be granted. The court will dismiss Plaintiff's state law claims without prejudice to reassertion in the proper forum.

---

[4] Shaeffer took buccal swabs from Plaintiff. Buccal swabs are swabs from the inside of an individual's cheek. *See King*, *supra* at 1968-69.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Fourth Amendment claims are dismissed with prejudice.

2. Plaintiff's state law claims are dismissed without prejudice to reassertion in the proper forum

3. The court will enter judgment by separate document.

Dated this 14th day of June, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge